Case No. 16-A1310, National Veterans Relations Board v. Lake County Senior Care and Pre-Medicine for the Well-Being of Women. Our case number will be 15-05. Mr. Longworth, for the respondent, you may proceed. Thank you. May it please the Court, Gregory Longworth here on behalf of Lake Point Senior Care and Rehab Center. Lake Point operates a nursing home, and this is similar to many cases that have come before this Court involving charged nurses and whether charged nurses are supervisory employees. If they are supervisory employees, they are not considered employees and therefore cannot be part of the bargaining unit. That's the issue before the Court. The Board in this case... How did this arise exactly? Was there a petition? The charged nurses want to become part of the unit, and they petitioned to do that. That's their preference. Is that the way it happened? I believe that it is. It happened actually about 10 years ago, originally. There was a charged nurse petition at that time. At that time, the regional director looked at the evidence and concluded that the charged nurses were supervisors and should not be included in the bargaining unit. Apparently there have been a lot of changes in what they do, or at least what the NLRB thinks the record reflects. NLRB doesn't really address that issue, and I would submit that in fact there's almost no changes. The changes are purely cosmetic. They are not substantive in any way. The responsibilities and duties of the charged nurses are the same today as they were... Exactly the same? Not exactly the same. Again, there are some cosmetic changes, but they're not material. What are the cosmetic changes? One of them, for example, is that the charged nurses now do not list which rule was violated by a CNA, a certified nursing assistant. But I would submit that that is a difference that makes no difference. It doesn't matter whether... What discipline do they actually administer? Right. Discipline is one of the things that I obviously want to address. It's the issue, and I'll get to your question in a second, but it's one of the issues that has come up many times in this court and in other courts. Most recently in GGNSC, Judge Merritt, you wrote a dissenting opinion in that case. That was a 2013 case in which charged nurses were determined to be supervisors. That case was decided largely on the issue of discipline. What's your answer to Judge Merritt's question? Your question then was, what evidence is there that they discipline? The evidence that they discipline, which is not disputed by the board, are three sets of facts. The first is that the charged nurses exercise discretion in deciding whether a CNA's misconduct should be disciplined. They decide whether to do nothing. They decide whether to orally instruct the charge nurse, or excuse me, the CNA. They decide whether there's going to be any discipline? Is that what you're saying? That's correct. Does the NLRB agree to that statement of fact? Yes. The NLRB agrees that the charged nurses have that discretion, and every charged nurse that testified, as well as the other supervisory employees, all agreed on that. They decide whether to do nothing, whether to orally instruct the CNA, or whether to use the disciplinary form. Once they use the disciplinary form, the charged nurse then describes the misconduct on the form. And there's no dispute about that fact. The third fact that there's no dispute about is that once that disciplinary form is filed, submitted to HR, to the Director of Nursing, it sets into motion the progressive discipline process. Is that necessary? That the charged nurse do that in order to have any disciplinary proceeding go forward? It's other routes to discipline. I suppose there could be other routes, but that's the primary route. One of the examples that the Board cites in its brief, where they say that there's independent investigation that goes on, I would submit that there's not in the vast majority of cases. In fact, the evidence said that there was not. What did the Board find? We have some standard of review here, do we not, in respect to what the Board itself has found? Right. What have they found on that issue? The Board took basically the same position here that it did in GG NSC. And that is that there's independent review by higher-up supervisors to what the charged nurses have done. And in fact, that's not what the evidence shows. The evidence does not support that finding. But it's the argument that is made by the Board in all of these cases. And I would submit that it's the same argument that they've made in a number of cases. We would need to find that to be clearly erroneous, the finding effect. The standard of review, the Supreme Court in universal camera has said, quote, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight. In other words, as this Court held in GG NSC, the Court has to take into account not only the evidence that the Board cited and relied on, but also what is in the record that the Board did not cite or distinguish. Or say why it was ignoring it. When the Court ignores, excuse me, when the Board ignored that evidence, there's good reason, as the Court said in GG NSC, to have questions and to raise questions about how much deference should be paid. There are a couple of other... I want to ask your opposing counsel how this case is different from, what is it, GG... GG NSC. GG NSC. AKA Springfield, that case? Yes. Okay. If you want to try to address what you think your opposing counsel will say as to the... How is it the same in respect to ways in which your opposing counsel is going to say they're different, I guess is what I'm saying. If the case is on all fours, then our task is easy. Well, I think it is. I think your task is easy in that regard because I think it is on all fours. But you can anticipate, or do you just want to wait until rebuttal? I mean, that's the crux of the issue, if you ask me. Well, I mean, I've read their brief, and I see how they try to distinguish. What's wrong with those attempts to distinguish? Well, the first point that they make is that the charged nurses don't determine the stage of discipline in the progressive discipline system. The charged nurse doesn't know that. Well, the progressive discipline system starts out, and once you start down that road of progressive discipline, every act of misconduct moves you further along toward termination, ultimately. So you ultimately reach termination at the end of that process. And what happens is the charged nurse writes up the misconduct, prepares the form, and says, you know, the CNA did not do such and such, turns that in to the director of nursing or the assistant director of nursing, and the charged nurse doesn't know where in that process of progressive discipline the CNA is because the charged nurse doesn't have access to all of the HR records. That was obviously true in Springfield. And that was true in Springfield. Why would they be arguing that's a reason to distinguish it? Well, they don't argue it's a reason to distinguish it. They argue it's a reason to sustain what's happened here. They're making the exact arguments that were made in the Springfield case. We'll have to wait until rebuttal to see. What does the record reflect about what happened in the instances where the witnesses who testified, the charged nurses, wrote up the person who had committed a violation? What happened? Did it get ignored? What happened? Now, without exception, the testimony from both the director of nursing and the HR manager was that without exception, it moved the person along the progressive discipline system one more step, without exception. So that clearly is discipline. Arguments have been made in Springfield as well as here that that's not discipline, but the court previously has rejected the fact that simply because somebody's not terminated, that an act is not a form of discipline. In Springfield, did we reverse what the agency did? Yes. This court has reversed on charged nurses. I'm talking about Springfield. Right. At least five times this court has reversed on the issue of charged nurses in published opinions and more in unpublished opinions. One of the other arguments that the government makes. With respect, we're not counting cases. To me, it would be just as forceful to get the case that's closest and say it binds us, and the other side can say, no, it doesn't bind because it's different in this way, and we can then decide. That's what I'm trying to focus on. It's not really helping me too much to say, oh, and there's other cases too. Right. But it is worth noting, I think, that while deference is generally paid, in the area of these charged nurses, this court and other courts have not been reluctant to overturn what the board has done. One of the other arguments that the board makes is that the charged nurses don't sign the disciplinary form. But if you go back to Springfield and look at the facts there, that was the case there as well. The court in Springfield noted that, in fact, sometimes, and let me back up. In this case, the argument was that the charged nurses do not alone sign the disciplinary forms. They do sign it, but another higher-up supervisor also signs it. In Springfield, the facts were even worse for the employer because, in fact, sometimes the charged nurses did not sign the form at all. And yet they were found to be supervisors because of the discipline issue. Notwithstanding factual findings of the board in that case. That's correct. And the final issue that the board has raised in connection, similar to what it has done and argued in Springfield, is the reinvestigation issue. And that's one that, Judge Merritt, you addressed in the dissent because, in fact, the evidence there was that basically nothing happened, according to your dissenting opinion, to the process. And, in fact, here there is no reinvestigation. The evidence is clear on that. And the process is always followed. And, as I indicated, the process, the progressive discipline process, is always moved forward as a result of each of these disciplinary forms. Thank you, counsel. Thank you. Good morning. May it please the Court. Barbara Sheehy from the National Labor Relations Board. We're seeking full enforcement of the board's order. I'll get right into, obviously, what Judge Rogers and, I think, Judge Ketledge and Judge Merritt recognize as the thrust of the case, is how is this different from GGNSC? I say that slowly because I get the… Or Springfield. I know, Springfield. Everybody referred to it in a particular way in the brief, so in my head it's that way, but I'll try to correct here and talk about it as Springfield. So, in that case, the very critical distinction is that the forms, the disciplinary form, that the charge nurses completed in Springfield, in and of itself, constituted discipline. It was the first step of the employer's progressive disciplinary program in Springfield. So the form itself, while there are certainly some similarities to the form here, but what's different is the incident report, or the EAIP, I'm going to call it an incident report, that the nurses at Lake Point complete is not part of the disciplinary process. So, in that respect, it puts this case closer to Frenchtown. How was it, the form itself, disciplined in Springfield? I'll just let you answer that. Sure. So the charge nurse completed the form, identified the misconduct, and then that constituted a written warning. That, in and of itself, that form, signed by the charge nurse, went into the file. They identified whether it was a more serious violation, or there were two different categories, I think, in that case. And of the lesser offenses then, the category, the less serious offenses, that was your first warning of which you got four before termination. So in the course of 12 months, four written warnings would result in, would trigger an investigation. I thought the court in Springfield, though, talked about how it moved you along in the step-by-step process. It did, because that's the first step, in the sense that you now have discipline in your file. That written, it constituted a written warning. That written warning went as drafted in the employee personnel file, and then in the course of 12 months. Is that what normally initiated discipline, the first charge, so to speak, or the first warning? Is that what initiated the disciplinary process? I'm not. In the first. It puts you at step one. And at step four, if you had four, and I think there may have been other, this is assuming the lesser offenses. How is that different from the present situation? Present situation, there's no, there's an investigation after the form is completed, and there's no, that the form itself does not constitute the discipline. It doesn't put you on at step one of the process, where you get four letters and you're out. It draws to management's attention that there was an incident. And then there's an investigation, and I would say that. Okay, but we're talking about more than one issue when you say that. Sure, sorry. I mean, that's okay. The form in Springfield automatically leads to a written warning, which is a step in the progressive discipline. That's basically exactly from the opinion. Here, though, the record says that the form in every instance led to an escalation in the progressive. That's a little distracting when you're shaking your head, sir, please. Led to an escalation in the progressive discipline. So, I mean, is that really a difference? I think respectfully it is. So what we have here is we have four, in the record there are four instances that people have talked, where there's the incident report and then we know what happened. And then we have the testimony from the director of nursing and the administrator, and then you have the charge nurses. I'm going to just back up before we get to the documentary evidence because I think that's a big one. I'm just talking about the effect of the nurses' actions here as opposed to an investigation issue. Absolutely. I put that in. Well, then I'll get straight to that. I would. In every instance it had this effect of escalating. Right, but that's. The board says that that's not part of the disciplinary process? That it's not in and of itself without further investigation, which is what. Okay, but that's a separate issue. So we could talk about that. This is Frenchtown. I would submit, the board submits that this is Frenchtown. There's no difference. The reporting forms that were completed in Frenchtown also put people on the path towards some sort of investigation to determine whether the reported conduct would lead to a personnel action by management. The mere fact that there has been a report to management, I would suggest, is not, and that may lead you into the process of discipline, that that is not the holding of Springfield. Springfield, the only way that it can be squared with Frenchtown is that the form itself in Springfield was the discipline. The charge nurses in Springfield presented the form to the nurses. If the record shows that in every instance the more senior people at Lake Point relied on the nurses' write-up to escalate the disciplinary process, I mean, doesn't that satisfy the standard? If that is an accurate characterization. I know you would disagree with it, but if that's an accurate characterization, doesn't that satisfy the standard? No, because I still think, I would still submit that that would be what Frenchtown is, that you have a conduit of information from the charge nurses, but that the charge nurses themselves have not meted out the discipline. They have not written. Is that effectively recommending discipline? No. In fact, the nurses here, the charge nurses testified, they had no idea whatever happened. So I think it's a stretch to say that somebody has exercised the authority to effectively recommend discipline when several of those people who were saying you were effectively recommending discipline said, I have no idea what happened. Why would they write it up instead of just talking to them then, if they had no idea that this could have any effect in the disciplinary process? I don't know that any of the charge nurses spoke to why they, in particular circumstances. As a practical matter, they know it's more serious. I mean, we don't have to blind ourselves to that, do we? No, certainly not. But that they opted to complete a form and report something because it may have been more serious doesn't necessarily, again, put us in that they have effectively recommended discipline, so much as they're drawing attention to the fact that, well, I saw Nurse Smith do this last week. I talked to her and she didn't do it. Maybe somebody else needs to speak with her because she didn't take my advice. The impression I got of the record was it was a rather more serious decision and that they knew it and that it wasn't this, oh, I just noticed this, and, you know, it's sort of an idle observation.  I was supposed to defer, I guess, to the board's impression. And here we have, so you do have conclusory statements from the Department of Nursing, the Don, and the administrator saying this is discipline. You have the charge nurses saying I had no idea. I wrote it up. If I saw something, I could choose, and as Judge Ketledge pointed out, perhaps in the more serious instances, they chose to write something as opposed to speak with somebody. But at the end of the day, what they wrote up, they didn't know what happened with it. It went up of the four instances that are in the record. So I think we should remember that there was no testimony and there's no evidence that every single time that a nurse reported on this form, that it resulted in discipline. We know that of the four instances that are in the record, that discipline resulted from that. Are there other ways to get discipline? Or is this a necessary part of the disciplinary process? I assume that there have to be other ways to be, it's not in the record. Because it was unusual, I think, for the nurse, because there was no reporting mechanism anymore for the specific category of offenses, the Category 1 or the Category 2. So I think that having taken that out, I think that you had other, I think the inference in the record, although it's not clear, is that there were other mechanisms to report the more serious offenses as opposed to these forms. If you were looking at it, I take it, maybe I'm wrong, that all the charge nurses are doing now is passing along information that they're asked by management to pass along to a process to look at the information. This is the first notice of the information, so that the process can start looking at the information to see if some discipline needs to be imposed. That's the way you look at it. That's the way the board looks at it, right? Yes. So then the question is, when you pass along that type of information, which the charge nurses are asked to pass along, to the process that then takes place, whether that which initiates or is the first stage, maybe the first stage, of a disciplinary process that can lead to termination, whether that itself should be characterized as discipline or not. That's the issue. That is the question, yes. And the board has answered that and said it was their burden to show that that constituted discipline. In order to take these employees out from the protection of the Act, the board said this was your burden. It doesn't have to be discipline itself, though. It can be effectively recommending discipline. Absolutely. And again, I would go back. Absolutely, that's part of the test for discipline. And I would go back to the charge nurses who said, or to the argument that's made in the brief on the basis of the charge nurses' testimony, how could they effectively be making a recommendation for discipline if, once completing the form, they had no further involvement? They didn't know what happened at the end of the day with that. So I think that it's putting the cart before the horse, then, to say… In Springfield, they knew what was going to happen. It was a written warning. The discipline in Springfield was the written warning itself. That was the discipline. You had a written warning in your file. Once you accumulated too many over the course of 12 months, you were subject to termination based on, I think, the fourth warning triggered in investigations before that was filed. I have a different question. Sure. Can these forms be filed, for instance, by a fellow CNA? I'm sorry, I don't know the answer to that. I don't know if it's not in the record. It's just like, you know, I'm in the hospital and I see bad things happening and I put the slip in. That would be notice. I guess the question would become whether. I certainly don't think there's anything to prevent a CNA. The natural answer is, if no, then the reason for no is because they're not supervising them. They're just reporting about them. Right? Do you see what I'm saying? But if the answer were yes, you would have a much stronger argument. You would say this is just a report form. Maybe even a patient could fill it out. Right. And I think part of the answer is, well, it's not in the record again. But again, I'd remind the court it was on the employer to prove the case. But on top of that, I guess one of the suggestions could be that the forms were only made available to the charge nurses. I don't know more about that. But to the extent that there was forms available to certain people at the desk, so I don't know. But you're right. If it was available for anybody to fill out or even me visiting somebody at the home, it would be certainly a different set of facts. As to whether this is discipline and so on, what about sort of the other fact in this case, which is that a couple of the charge nurses received lesser pay increases because their, I guess, HR write-up said that they did not do as effective a job of, I don't want to use the loaded word, supervising. I forget the word. Directing. Directing. Thank you. In the record. I mean, does that suggest that, you know, put this in a certain light that these disciplinary forms are, in fact, direction or, you know, directing discipline? No. I don't think it changes the perspective of the forms themselves. Because I think as it related to the failure, I think the specific example, I think there were ten other sort of failures for reasons why a particular nurse didn't get a promotion or a pay increase. So I don't think we can focus uniquely on that one thing. There was testimony that at least one person, as I recall, got a lesser, would have gotten a bigger raise if they had scored higher on directing the other nurses. Right. So that has nothing to do, I would submit, that that doesn't have anything to do with the discipline itself. So much as the charge nurses have the responsibility, for instance, there's some sort of, I wish I could have actually seen the hospital understand how this works. There's some sort of computer system at the front desk that will ding if certain tasks haven't been completed by particular times. Everybody has an assignment sheet thing the CNAs need to do for every patient. And so I think that that charge nurse is held responsible then for ensuring that if that light goes, and if they've been told or then there's now an indication and people know that there's a particular task that hasn't been done, that they would be responsible for telling the charge nurse, hey, patient in room 104 hasn't had this particular, hasn't been changed today or something like that. So you could get dinged on your evaluation for not being able to do that task well. So I'm not sure that the failure to direct or the, not failure to direct, but she didn't direct well enough to get the raise has more to do with ensuring that the hospital, or that the facility rather, is running as it's supposed to run and people are doing the things that they need to do. The ding is equivalent, if what the charge nurses are doing is discipline, then the ding itself is discipline, right? It's the same thing. I mean it initiates a process where you write something down on a piece of paper and get it started flowing through a system that in the end determines whether there's going to be a downside. Right, in the end, which again I think is what puts us, I'm going to say it again, puts us in the realm of French town. So I don't think that with respect to discipline, that that particular performance appraisal really bears on discipline. To the extent though that the argument is that it bears on responsibly directing because they're held accountable. We rely on what we write in our brief, which is that's not me being held, that's not a charge nurse rather being held accountable for the failures of people she's purportedly supervising. It's failure for her own inability to do a job that she is supposed to do, which is to make sure that people are doing what they are supposed to be doing, consistent with the assignment sheets, the computerized system, assignment or the management directed tasks. Unless there are any other questions, even on the, any other issues? Again, we'd be seeking full enforcement. We covered a lot of territory there. Briefly, let me address a few issues, some of the questions that you've asked. The DING does not automatically start the process because the charge nurse has to decide whether the charge nurse is going to talk to the person, ignore it completely, talk to the CNA informally, which does not constitute discipline, or write it up in the disciplinary form. Once they write it up in the disciplinary form, it goes in the employee's personnel file. It is the same as the Springfield case. It is disciplined in the same way. Everything that goes into an employee's personnel file is a part of a disciplinary process? Not everything in the file is, but this goes in and is part of the disciplinary process. Well, that's because it goes in the file. You want to characterize it as disciplinary, not because of that, do you? I mean, that's just a piece of information in the file. Not every piece of information that goes in the file is to be characterized as disciplined. That doesn't have anything to do with it, does it? You're correct. Not everything in a file is discipline, but this is discipline. The director of nursing, Macaulay, in the record, 199-200, and the HR manager, Schrauben, in the record at 292, said this always is acted upon. It always moves somebody up to the next step in the disciplinary process. So the DING doesn't necessarily initiate the process, but the charge nurse does. Is it okay for the DING to get into the process without a charge nurse filling out one of these forms? No. It's something that the charge nurse... The charge nurse speculates that there are and says your burden is to show that there aren't and you haven't shown that there aren't. Well, the evidence in the record goes through the training that was provided to the charge nurses, and that's very clear that the process is that the charge nurses issue the disciplinary forms. And the charge nurses know, they're trained, that when they issue the disciplinary form, it's starting the disciplinary process. My question is, does anything else start the disciplinary process? And there's just nothing in the record that says yes or no on that? That anyone else can? Yes. A patient. A patient could not. Or a fellow CNA. They cannot. I don't know where in the record that would be. What I do know is that the record does address the training that is provided to the charge nurses to initiate that process and get it started. French Town. In French Town, it is not a comparable case. In French Town, the charge nurses did not use a form that was part of the disciplinary process. That's part of the findings of French Town and part of the reasoning for it. In fact, all that was provided was an in-service training. And what the director of nursing in French Town said, the director of nursing from French Town, said that that in-service is not discipline. So the testimony from everybody in that case is that the in-services were not discipline, and therefore this court held that in-service. It was a communication between the charge nurse and the CNA. But it never moved somebody. It didn't move somebody. Oral or what? I don't understand. I believe it was oral. That doesn't mean much to me. Yeah, I believe it was oral. But that is not what happened here. This case is not like French Town. Paper form? Is that the difference? It's a paper. And it's not just that it's a paper form. It's a paper form that is part of the disciplinary process. It's part of that process that moves along another step when that is what happens, when the form is issued. If the court has other questions, I'd be glad to address them. No, thank you. Thank you, Your Honor. It was an interesting case. The case will be submitted. Please call the next case.